STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE L. HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
SUSAN KNIGHT (CABN 209013)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5045
   FAX: (408) 535-5066
   Email: jeff.nedrow@usdoj.gov
          susan.knight@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LIANG CHEN,<br>DONALD OLGADO,<br>WEI-YUNG HSU, and<br>ROBERT EWALD,<br><br>    Defendants. | CASE NO.: CR 17-00603-BLF<br><br>GOVERNMENT'S MOTION IN LIMINE NO. 9: MOTION TO ADMIT E-MAILS BETWEEN DEFENDANTS OFFERED BY THE GOVERNMENT<br><br>Pretrial Conference: June 24, 2021<br>Time: 1:30 p.m.<br>Court: The Hon. Beth L. Freeman |

## I.    THE INDICTMENT

Liang Chen, Donald Olgado, Wei-Hung Hsu, and Robert Ewald (hereafter, "Defendants") are charged in Count One with conspiracy to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5), and in Counts Two through Twelve with theft of trade secrets and aiding and abetting the theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(3) & 2. The government seeks to prove at trial that Defendants, while employees of Applied Materials, Inc. (Applied), conspired in 2012 to steal trade secrets from Applied related to Applied's development and use of Metal Organic Chemical Vapor

1

Deposition ("MOCVD") technology, a complex manufacturing process used to make semiconductor wafers. The semiconductor wafers manufactured through the technology were used in lighting and electronic devices, such as flat screen televisions and smart phones. In addition to the conspiracy, the Government alleges that the Defendants knowingly received and possessed eleven particular Applied trade secrets in the form of CAD drawings containing information associated with the MOCVD technology, with the Defendants knowing the trade secrets contained in the CAD drawings were stolen and intending and knowing that the theft of the CAD drawings would injure Applied.

**II. MOTION IN LIMINE NO. 9: The Court Should Admit Emails Between Defendants Offered by the Government**

On December 17, 2012, the victim company, Applied Materials, entered into a stipulated temporary restraining order in a civil action with Defendant Olgado in which Olgado agreed to "immediately return . . . all communications (including emails and text messages) sent or received by and between him and any other person or entity, and all documents (including meta-data), relating to any attempts by any Defendant to commercialize Applied Materials' MOCVD technology and processes for LEDs and Power Devices and or that relate to the formation, capitalization, investment, structure, or operation of the entity or product which the Defendants refer to as Envision." Nedrow Decl. Ex. 1. Olgado further agreed in the stipulation to return this evidence to Applied Materials in a "forensically sound" manner. Nedrow Decl. Ex. 1. On December 19, 2012, an attorney with the law firm Shuman Snyder, who represented Olgado, produced to Applied Materials hard copies of approximately 166 pages of emails between Olgado, Chen, Hsu, and Ewald. *See* Nedrow Decl. Ex. 2. (cover letter without attachments). The letter included an inventory sheet in which Olgado identified his email accounts as donald831@gmail.com, mrbreakit831@gmail.com, and donald.olgado@yahoo.com. *See* Nedrow Decl. Ex. 3. The attachments further included preservation letters Olgado sent to Google and Yahoo requesting preservation of his emails. *See* Nedrow Decl. Ex. 4.

1  In a follow-up letter dated January 7, 2013, Olgado's counsel sent a letter which provided further detail regarding Olgado's methodology in gathering the emails Olgado provided in the December 17, 2012 production.  *See* Nedrow Decl., Ex. 5.  Olgado's counsel stated:

> Mr. Olgado identified documents related to his communications with the other defendants by searching for their names in the sent email box folders.  This method enabled Mr. Olgado to identify the emails being sought by Applied.  Mr. Olgado also reviewed the emails and was able to determine, to the best of his recollection, that the results of his search produced the relevant emails in his possession.  He did not have emails in his inbox because he deleted emails from the other defendants in early December 2012.

The emails are replete with admissions by Defendants that demonstrate Defendants' intent to steal Applied trade secrets as the backbone of their startup venture, which they called Envision.  A sampling of these emails is attached to the Nedrow Declaration as Exs. 6-1 to 6-6.  To wit:

- On September 16, 2012, Chen emailed Olgado, Hsu, and Ewald stating that he "wants to go ahead, get my lawyers to register a company by 11/1. In that case, the company would own the patent filing between 11 /1 to when the VC/PE money comes in by Jan or March. It is too bad that you guys are still in Applied." (Exhibit 6-1).

- Olgado sent a reply to Chen's September 16, 2012 email in which Olgado stated "My problem is the paper trail and conflict of interest with AMAT." (Exhibit 6-1).

- On September 27, 2012, Olgado sent an email to Chen, Hsu, and Ewald stating "Just to highlight the exposure risk.  I've been working through demo licenses and getting this set up and getting quotes.  Most of the computer guys, software guys come back and ask me if its related to AMAT—even though I never used AMAT email or reference anywhere.  After asking—they all have databases.  So I have to ask them to keep it under wraps." (Exhibit 6-2).

- On October 9, 2012, Olgado emailed Chen and stated: "Tough last few days.  AMAT push software that stops you from using and  usb storage.  My USB drive also crashed, might not be a coincidence.  I have to recover these files of I'm hosed. . . I now have a problem with the rest. I will have to figure out how to get around it.  Maybe setup a FTP site.  It will be very slow. I need to get some hackers." (Exhibit 6-3).

- On October 22, 2012, Ewald emailed Olgado and wrote, "I have a couple questions for you:

1. When do you think you will need office space, Nov or Dec? 2. Have you had a chance to review the execution plan?" (Exhibit 6-4).

- On October 22, 2012 Olgado wrote: "My drive is unrecoverable. So I'm back to scratch downloading. I opened a GIS ticket to pull tape drives on 9/1 - I might get lucky.

Liang - forget that USB exception request. I have a solution by connecting my NAS and resetting the windows network to my network I can get files off.  These guys are pathetic.  So if anyone wants to pull stuff off, let me know." (Exhibit 6-5).

The Court should admit the foregoing email excerpts, and any similar ones offered by the government.  The emails are authentic and relevant. Defendants' emails to each other (and to other uncharged individuals) are not hearsay when offered by the government as an opposing party's statement. *See* Fed. R. Evid.  801(d)(2)(A) (providing a statement is not hearsay if "offered against an opposing party and was made by the party in an individual or representative capacity").  In addition, the emails constitute statements by co-conspirators during and in furtherance of the conspiracy.  *See id.* Rule 801(d)(2)(B)-(E).  Furthermore, to the extent the emails may contain responses from individuals who are not a part of the conspiracy, any such emails are admissible to demonstrate Defendants' knowledge and intent and the effect on the hearer.  There are no other bases for exclusion.

The same arguments support admissibility of emails from two other sources.

First, Applied Materials obtained emails of a similar nature from its own servers in which one or more of the Defendants discuss their efforts to capitalize on the stolen MOCVD technology.  These emails are similarly authentic, relevant and admissible pursuant to Rule 801(d)(2)(A) and (E).

Second, the government obtained for a search warrant for Olgado's computer on March 9, 2013.  The government executed the warrant on March 10, 2013.  Pursuant to the warrant, the government obtained a number of similar additional emails in which Olgado and one or more of the charged Defendants discussed their efforts to capitalize on the stolen MOCVD technology.  The Court has considered and denied Olgado's motion to suppress these emails to the extent the communications occurred after July 20, 2012. ECF No.136.  These emails are also authentic, relevant, and admissible pursuant to Rule 801(d)(2)(A) and (E).

## III. CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court issue a ruling prior to trial on the admissibility of the referenced emails as set forth above.

DATED: June 10, 2021                                    Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

/s/
JEFFREY NEDROW
SUSAN KNIGHT
Assistant United States Attorneys