Ted W. Cassman (Cal. Bar 98932)
Laurel Headley (Cal. Bar 152306)
Raphael Goldman (Cal. Bar 229261)
ARGUEDAS, CASSMAN, HEADLEY &
GOLDMAN LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone:   (510) 845-3000
Facsimile:   (510) 845-3003
*Counsel for Defendant*
*LIANG CHEN*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LIANG CHEN, DONALD OLGADO, WEI-YUNG HSU, and ROBERT EWALD,<br><br>Defendants. | No. CR-17-603 BLF<br><br>**DEFENDANT LIANG CHEN'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29**<br><br>Court: The Hon. Beth Labson Freeman<br>Courtroom 1 |

Defendant Liang Chen moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court must enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Rule 29(a); *United States v. Tisor*, 96 F.3d 370, 379 n.6 (9th Cir. 1996). A Rule 29 acquittal is required where no "rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt." *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002). Here, as to each count charged in the indictment, no rational trier of fact could find the essential elements established beyond a reasonable doubt.

## I.  Count One

Count One charges a conspiracy to steal trade secrets belonging to Applied Materials, Inc. Dkt. 1 at ¶¶ 11-18. Among other elements, the government is required to prove that Dr. Chen intended to convert trade secrets belonging to Applied and that Dr. Chen knew that his conduct would injure Applied. *Id.*; *see also* 18 U.S.C. § 1832(a)(5). As to those elements, the government's proof has fallen well short and Dr. Chen should be acquitted.

The evidence presented to date in this trial establishes the following facts:

- Applied Materials was exiting the MOCVD business.
- Dr. Chen, at Applied Materials' direction, had explored various options for creating a spin-out company that would pay Applied for the use of its MOCVD technologies.
- After Applied Materials declined to undertake these initial proposals, Applied executives and other employees knew Dr. Chen intended to leave the company and attempt to form a start-up company that would develop MOCVD technologies. *See, e.g.*, Exs. 339, 1016, 1019, 1036, 1040, 1058; *see also, e.g.*, 7/28/2012 Tx at 578-83; 7/30/2021 Tx at 923-28, 935-40.
- Applied executives, including Applied's president Gary Dickerson, made statements that a reasonable person in Dr. Chen's position would construe as an invitation or encouragement to raise money and make Applied an offer to do

a business deal that would involve a new company paying for the right to use Applied's MOCVD technology. *See, e.g.,* Exs. 294, 1024. Mr. Dickerson testified that in August 2012 he understood that Dr. Chen intended leave Applied and would try to establish an MOCVD startup. 7/30/2021 Tx at 923-28, 935-40. On August 24, 2012, Mr. Dickerson sent Dr. Chen an email stating that he "personally would be happy to help with you with this project if you find some group that can make a more compelling proposal." 7/30/2012 Tx at 938-39; *see also* Ex. 294. Mr. Dickerson admitted that he did not tell Dr. Chen that he should not go out and "try to do a startup." 7/30/2012 Tx at 939.

- Dr. Chen made statements demonstrating his state of mind: that he believed there was a serious opportunity to make such an offer to Applied. *See, e.g.,* Ex. 93C, 1013, 1014.
- Dr. Chen's business plan presentation to a potential investor stated his intention to spend substantial sums on an "IP portfolio." *See* Ex. 181 at p. 41. And witness testimony, including from engineers who worked on the spin-off proposal, demonstrates that the idea being considered by Defendants was to establish a start-up business that would operate with the knowledge and blessing of Applied Materials. *See* 8/3/2021 Tx at 1428-30 (testimony of E. Kollata); *see also* 8/2/2021 Tx at 1067-68 (A. Harrus). In addition, Special Agent Burstein testified to Dr. Michael Kutney's prior inconsistent statement that Dr. Chen told him that he intended to create a startup that would license Applied's MOCVD technology. 8/4/2021 Tx at 1787-88.
- Alain Harrus, a venture capitalist to whom Dr. Chen presented his startup proposal on November 20, 2012, testified that Dr. Chen told him that he intended to take the MOCVD division out of Applied with Applied's knowledge; and the PowerPoint presentation that Dr. Chen presented to Mr. Harrus included the slide stating an intention to spend substantial sums on an "IP portfolio." 8/2/2021 Tx at 1067-68, 1079; *see also* Ex. 181 at p. 41. Harrus further testified

1         that he would never have pursued Dr. Chen's proposal if Applied did not provide

2         legal authorization for the project.  8/2/2021 Tx at 1068.

3 In light of these facts, which we submit are uncontradicted, any reasonable juror would

4 find that the evidence establishes a likelihood that Dr. Chen intended to start an

5 MOCVD enterprise only if he could convince Applied to do a business deal in which Dr.

6 Chen's business would pay for the right to use Applied's MOCVD technology.

7 Accordingly, no reasonable juror could find Dr. Chen guilty of the alleged conspiracy—

8 if he intended to pay for the use of Applied's MOCVD technology, he did *not* intend

9 improperly to convert the technology to his own use, nor did he know he would injure

10 Applied by using the technology.

### II.    Counts Two through Twelve

12       The Court should also acquit Dr. Chen of the substantive charges, Counts Two

13 through Twelve.  There are several reasons:

14       First, the government is required to establish the same elements discussed

15 above: that Dr. Chen intended to convert trade secrets to his own use, and that he

16 knew his conduct would injure Applied Materials.  *See, e.g.,* 18 U.S.C. § 1832; Dkt. 1 at

17 ¶¶ 19-20; Ninth Circuit Model Criminal Jury Instruction No. 8.141B.  For the reasons

18 discussed in Part I, the government has not come close to meeting its burden on these

19 elements, and no rational juror could find otherwise.

20       Second, Counts Two through Twelve charge Dr. Chen with receiving or

21 possessing particular trade secrets.  Dkt. 1 at ¶¶ 19-20.  There has been no evidence

22 whatsoever that Dr. Chen actually received or possessed them.  Instead, the only

23 evidence relates to Mr. Olgado's alleged receipt and possession of the purported trade

24 secrets.  Dr. Chen could be liable only if he aided and abetted Mr. Olgado's possession

25 or receipt.  But a conviction under an aiding and abetting theory would require proof

26 that Dr. Chen "acted with the knowledge and intention of helping" Mr. Olgado possess

27 the trade secrets in question.  *See* Ninth Circuit Model Criminal Jury Instruction No.

28 5.1.  There has been no such evidence.  No evidence proves beyond a reasonable

- 3 -
DEFENDANT LIANG CHEN'S MOTION FOR JUDGMENT OF ACQUITTAL
*U.S. v. Chen*, et al, No. CR-17-603 BLF

doubt that Dr. Chen intended to help Mr. Olgado receive or possess the information listed in Counts Two through Twelve.

Third, even if the government could identify some evidence that Dr. Chen intended to help Mr. Olgado receive or possess the alleged trade secrets, it could not point to any act undertaken by Dr. Chen within the statute of limitations period—that is, after November 30, 2012.  See 18 U.S.C. § 3282 (five-year statute of limitations); Dkt. 1 (indictment filed November 30, 2017).  Although a few out-of-circuit authorities suggest that the crime of aiding and abetting is not "complete" for limitations purposes until the underlying substantive crime is complete, see, e.g., United States v. Erb, 543 F.2d 438, 446 (2nd Cir. 1976), counsel has found no authority from the Ninth Circuit that considers the issue.  We urge that the fairest and most sensible rule is that a person should not be convicted for acts he undertakes entirely outside the limitations period.  Accordingly, even if Dr. Chen acted in some manner before November 30, 2012 to aid or abet the possession or receipt of alleged trade secrets, the statute of limitations should bar his conviction.

## Conclusion

The Court should enter a judgment of acquittal as to all counts against Dr. Chen.

Dated: 8/9/2021

Respectfully submitted,

_____
Raphael M. Goldman
ARGUEDAS, CASSMAN, HEADLEY & GOLDMAN LLP

*Counsel for Liang Chen*